TIMOTHY COURCHAINE
United States Attorney
District of Arizona

D. MATTHEW CONTI
Assistant U.S. Attorney
Arizona State Bar No. 021719
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: (602) 514-7500
Email: David.Conti@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Alexis Saul Monter,<br>Defendant. | No. 26-MJ-03265-MTM-1<br><br>**GOVERNMENT'S MEMORANDUM REGARDING DETENTION** |

The Defendant has been charged by complaint with conspiracy to distribute 400 grams or more of a mixture of substance containing fentanyl and distribution of 400 grams or more of a mixture of substance containing fentanyl. Thus, the Defendant is subject to a rebuttable presumption of detention as a flight risk and a danger to the community, under 18 U.S.C. § 3142(e)(3)(A) because he is charged with violating 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(vi), based on the drug quantity totals referenced in the complaint, is an offense for which there is a maximum term of imprisonment of ten years or more. The Defendant cannot rebut this presumption.

In determining whether the Defendant is a danger to the community or a risk of flight, this Court must consider the nature and circumstances of the offense charged, the weight of the evidence against the Defendant, the history and characteristics of the Defendant, and the nature and seriousness of the danger caused by the Defendant's release. 18 U.S.C. § 3142(g).

## I. **Nature and Circumstances of the Offense Charged.**

As summarized in the Statement of Probable Cause attached to the Complaint (Doc. 1), Phoenix Homeland Security Task Force ("HSTF"), received information regarding a transnational drug trafficking organization ("DTO") operating between Mexico and numerous states in the United States, including Arizona. Information received further indicates that an individual, who law enforcement believe is a yet unindicted coconspirator (the "Drug Source"), is responsible for coordinating and supplying controlled substances within the United States.

In the days leading up to July 8, 2026, an HSI undercover agent ("UC Agent") communicated with the Drug Source. During these communications, the Drug Source agreed to sell the UC Agent approximately one kilogram of fentanyl pills (approximately 10,000 pills) for $4,000.00 in Phoenix, Arizona.

On July 8, 2026, the UC Agent confirmed the deal with Medina and told them that a courier would contact them. The Drug Source instructed the UC Agent to provide the courier with $2,000.00 and then to wire him the remaining $2,000.00

At approximately 1848 hours, the UC Agent received a text message from the local distributor via WhatsApp from telephone number ending in 1866 ("x1866"). The caller coordinated the location for the transaction with the UC Agent.  Based on the subsequent investigation, investigators believe that x1866 was used by Alexis Saul Monter (the "Defendant").

At approximately 1927 hours, the UC Agent called the Defendant to exchange vehicle information. The Defendant said he would arrive in a white sports utility vehicle.

At approximately 1930 hours, a white Mazda CX-5 ("Mazda") arrived at the meeting location and parked next to the undercover vehicle ("UC Vehicle"). Arizona Motor Vehicle Department (MVD) records indicate registration the Mazda was registered to "Noe Boyzo Soto" with an address of on N. 46th St. in Phoenix, Arizona.

The UC Agent met with the occupants of Mazda. Noe Soto Boyzo ("Soto") was driving and the Defendant was in the front passenger seat.  The UC Agent reported that the

Defendant was doing all the talking related to the drug deal. During the meeting, the Defendant argued the terms of the deal, and he ultimately called someone else to confirm the details of the deal. Afterwards, the UC Agent gave the money to the Defendant who provided a grocery sack containing blue pills.

After completion of the transaction, surveillance units attempted to follow the Mazda, but lost the vehicle in a residential area near 91st Ave. and Campbell Rd. in Phoenix, AZ.

Following the purchase, DEA tested the drugs (round blue pills). The pills weighed 662.10 grams (net weight) and contained N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl).

HSI Special Agent Nicholas Henderson later conducted law enforcement record checks regarding the occupants of the Mazda. Open-source Cash App user data indicates that x1866 is associated with "Alexis Monter" with the handle, "$AlexisMonter7." Agent Henderson conducted law enforcement record checks of Alexis Monter and located a border crossing record for the Defendant. The record indicated that the Defendant crossed from Mexico into the United States through the Douglas, AZ point of entry (POE) on July 7, 2026, in a gray Acura MDX SUV ("Acura") bearing Arizona temporary registration L219912. Photographs of the individual depict a Hispanic male wearing a black shirt, black hat, glasses, with a large black beard, and a sleeve style tattoo on his right forearm. Arizona Motor and Vehicle Department records indicate that the Defendant has an Arizona Driver's License listing him as approximately 6'03" tall and 210 pounds at the time of issuance on June 11, 2026. The records indicate he resides at a residence on 11th St. in Douglas, AZ. Agent Henderson compared the driver's license photograph to the border crossing photograph and believes that they are the same person.

Agent Henderson showed the UC Agent the photograph of the Defendant from the border crossing photograph and the driver's license photograph. The UC Agent identified the front passenger of the Mazda as the Defendant. Agent Henderson also reviewed video footage of the controlled drug purchase taken from recording devices utilized by the UC

Agent. After reviewing the video, Agent Henderson believes that the Defendant was the front passenger of the Mazda.

On August 19, 2026, Pima County Arizona Sheriff's Office broadcasted a Beyond the Lookout Of ("BOLO") of a 2007-2013 gray Acura MDX SUV and two male subjects that were involved in a shooting that occurred in Southern Arizona in the early morning hours resulting in the death of a Tucson Police recruit and severe injury to his fiancé, a Pima County Sheriff Detention Officer. The BOLO further described the suspect vehicle missing a gas cap cover and having a rear driver's side wheel that is different from the other three wheels on the vehicle. Agent Henderson reviewed photographs of the suspect vehicle on the BOLO and noticed that the vehicle has a moonroof, receiver hitch assembly, chrome door handle accents, and a brow style front windshield tint strip. After reviewing the photographs in the BOLO, Agent Henderson realized the described vehicle was similar to a vehicle the Defendant crossed into the United States in on July 7, 2026.

There was a flurry of investigative activity following the August 19, 2026 homicide. On August 20, 2026, a federal arrest warrant was issued for the Defendant in this matter.

On August 21, 2026, investigators went to Defendant's mother's residence to locate the Defendant. Defendant's mother was not at the residence, but the investigators spoke with her on the phone. During the call, she was informed that law enforcement was looking for the Defendant.

The following day, Deputy United States Marshal ("DUSM") Karolina Duda received a phone call from a Mexico-based number. The caller claimed he was the Defendant and said, "I heard you guys are looking for me." DUSM told the caller that investigators wanted a statement related to the vehicle involved in the homicide. The caller claimed that he did not own that car and did not have it registered. The caller continued that he sold the car and he was on vacation in Rocky Point. The caller stated, "I have been googling my name and I'm not in trouble for that homicide." He then said he would call DUSM Duda back with an address where he would be available to meet and hung up. DUSM Duda did not receive a call after that.

The Defendant was arrested at the Douglas Port of Entry on August 30, 2026 when attempting to enter the United States.

## II. History and Characteristics of the Defendant

The Defendant is a United States citizen. The Pretrial Services Report indicates that the Defendant said he lives in Douglas, Arizona, but also claimed that he recently has been living with his mother in Phoenix, Arizona. He is in a relationship with a woman who lives in Agua Prieta, Mexico and regularly travels there to visit her. He also has maternal family members who live in Mexico.

The Pretrial Services Report indicates the Defendant has a prior conviction for Transporting Illegal Aliens and his probation was revoked twice. He has other prior convictions for Disorderly Conduct – Fighting (twice), Assault – Intent/Reckless/Injur. Assault-Intent/Reckless/Injure, Aggravated Assault Domestic Violence – Impede Breathing, Trafficking a Schedule I or II Controlled Substance, and Narcotic Drug – Possess for Sale. In addition to his prior convictions, his prior arrests include Failure to Appear, Burglary 3rd Degree – Unlawful Entry, Harboring Aliens, Possession of a Weapon by a Prohibited Person, and Unlawful Imprisonment (Domestic Violence). While the Defendant was serving a three-and-a-half-year prison sentence in the Arizona State Department of Corrections stemming from his Narcotic Drug – Possess for Sale conviction, he received a Major Disciplinary Infraction for Fighting.

The United States alleges that the Defendant is a member of a large-scale criminal organization who participated in the distribution of massive quantities of fentanyl and is linked to a violent crime in Tucson, Arizona. His ties to a foreign country and his criminal history cast doubt on his ability to abide by any conditions of pretrial release. His criminal history illustrates that he is a danger to the community and poses a serious risk of flight.

## III. Weight of the Evidence

Although the Ninth Circuit Court of Appeals has held that this is the least important factor in the detention analysis for the Court to consider, it is still a factor the court must consider under 18 U.S.C. § 3142(g). Here, the Defendant was observed riding in a vehicle

to an undercover fentanyl deal where he was captured on video. The video captured his involvement in the sale of a large quantity of fentanyl. Thus, the United States has a strong case against the Defendant, which increases the likelihood he will flee.

## CONCLUSION

Because the Defendant is a citizen of Mexico and is a member of a Mexico-based drug trafficking organization involved in the distribution of massive quantities of fentanyl and linked to the killing and attempted killing of law enforcement personnel, he cannot rebut the presumption that he is a serious flight risk and a danger to the community. Thus, the United States recommends the Defendant be ordered detained pending trial because there is no condition or combination of conditions that will reasonably assure the Defendant's appearance or the safety of the community.

Respectfully submitted this 9th day of September, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ D. Matthew Conti*
D. MATTHEW CONTI
Assistant U.S. Attorney